IN THE CIRCUIT COURT OF CARROLL COUNTY, MARYLAND

| | |
|---|---|
| Joseph Harmon<br>for himself and on behalf of all others<br>similarly situated,<br><br>    Plaintiffs,<br>v.<br><br>BankUnited FSB<br>Serve On: President,<br>    255 ALHAMBRA CIRCLE<br>    CORAL GABLES, FL, US 33134,<br><br>    Defendant. | Case No. 06-C-08- 51995<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

1. This is a consumer class action asserted by Joseph Harmon ("Harmon"), on behalf of himself and all others similarly situated. He asserts class claims against the Defendant BankUnited, FSB ("BankUnited") for engaging in unfair or deceptive trade practices in violation of the Maryland Consumer Protection Act, § 13-301 *et seq*. ("MCPA") as follows:

### I. FACTS RELATING TO HARMON

2. Harmon is an elder citizen of Maryland who was solicited to enter into refinance home loan by an entity known as Smart Money Mortgage ("Smart Money").

3. Upon information and belief Smart Money acts as a broker for the Defendant Bank United, which has a network of brokers who solicit homeowners for loans on behalf of BankUnited.

RCVD 06 NOV03'08 15:11

4. In connection with the solicitation of Harmon, Smart Money sent Harmon a Good Faith Estimate and Truth in Lending Statement. Copies of these documents provided to Harmon are attached as Exhibits 1 and 2.

5. The Good Faith Estimate referenced a 1.2% interest rate with a Principal and Interest payment of $850.24. See Exhibit 1.

6. The Truth in Lending Disclosure Statement referenced a 1.305% annual percentage rate and 479 payments of $850.24 and 1 payment of $851.18. The variable rate feature checkbox was not checked on the document. There was no notice of any prepayment penalty. See Exhibit 2.

7. The Application presented to Harmon referenced an interest rate of 1.2%. There was a check mark next to ARM with a undecipherable reference to "5Y FIXED MIN PAY CCB". See Application attached as Exhibit 3.

8. The above documents were used to attract and induce the Plaintiff into entering into a loan with the Defendant.

9. At settlement, no one advised the Plaintiff that the loan terms had changed. No one advised the Plaintiff that the paperwork presented to him at settlement was dramatically different than all paperwork previously provided to him in connection with the loan. However, the loan terms changed dramatically.

10. The loan annual percentage rate went from 1.305% to 8.433%. The 479 even monthly payments of $850.24 skyrocketed to payments as high as $2,720.15 per month. The fixed rate was now changed to a variable rate loan. There was also a prepayment penalty. See Truth in Lending Disclosure statement attached as Exhibit 4.

11. The great variances in the loan term could not have been by mistake but instead a conscious design to bait consumers into loans and then switch them into radically different loans.

12. The note used by the Defendant also made use of payments amounts that were represented to be based on a "yearly interest rate" of 1.2% when the rate was never provided for a year.

13. The loan refinanced the mortgage against Harmon's residence and was for personal and household use.

14. The loan was made without regard to Harmon's ability to pay the increased payments that would become due under the terms of the note.

15. Defendant did not make any determination if Harmon could afford the loan. To this end, Defendant made no investigation or inquiry of Harmon's income or ability to pay.

16. In fact, upon information and belief, the loan was made with knowledge that Harmon would not be able to afford the loan terms later in the loan and provided Defendant someone that it could sell a new loan so that Harmon could avoid the dramatic increases in payments called for by the note. It began a churning process of Harmon.

17. Further, the Defendant intended to sell the loan into a securitization pools as it had in the past. Defendant was aiding Harmon in obtaining credit that Defendant knew or should have known that he could not afford but which Harmon was lead into believing that he could afford by providing documents early on that showed he would have a steady payment of $850.24 over the life of the loan.

18. Upon information and belief, Defendant made similar loans with similar misleading initial disclosures to others included in the definition of the class below.

## II. FACTS COMMON TO ALL TRANSACTIONS

19. Plaintiff and the Class Members (as defined below) entered into loans with the Defendant.

20. The loans were initially disclosed as very low annual percentage rate loans, even monthly payments, with no mention of variable rates or of prepayment penalties.

21. Upon information and belief, the information is conveyed on standard forms including the note, good faith estimate, and truth in lending forms used with the Plaintiff.

22. The final terms of the loan vary substantially from the actual loan terms offered by the Defendant.

## III. LAW COMMON TO ALL TRANSACTIONS

23. The Maryland legislature stated:

> The General Assembly recognizes that there are federal and State laws which offer protection in these areas, especially insofar as consumer credit practices are concerned, but it finds that existing laws are inadequate, poorly coordinated and not widely known or adequately enforced. MD ANN. CODE., COMM. LAW. § 13-102 (a)(2).

24. The legislature's purpose in enacting the MCPA:

> The General Assembly concludes, therefore, that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland. It is the purpose of this title to accomplish these ends and thereby maintain the health and welfare of the citizens of the State. MD ANN. CODE., COMM. LAW. § 13-102 (b)(3).

25. MD ANN. CODE., COMM. LAW. § 13-101 (c) defines a Consumer as: "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit."

26. MD ANN. CODE., COMM. LAW. § 13-101 (d) provides:

> "Consumer credit", "consumer debts", "consumer goods", "consumer realty", and "consumer services" mean, respectively, credit, debts or obligations, goods, real property, and services which are primarily for personal, household, family, or agricultural purposes.

27. The Plaintiff and Class Members are Consumers. The loan was primarily for their personal, household or family purpose.

28. MD ANN. CODE., COMM. LAW. § 13-101 (g) provides:

> "Merchant" means a person who directly or indirectly either offers or makes available to consumers any consumer goods, consumer services, consumer realty, or consumer credit.

29. The Defendant is a merchant.

30. The Defendant has committed an unfair or deceptive trade practice by:

   a. Making a false or misleading oral or written statement or other representation of any kind which had the capacity, tendency, or effect of deceiving or misleading Plaintiffs.

   b. Failing to state a material fact and the failure deceived or tended to deceive Plaintiffs.

31. Plaintiff and the Class Members have been damaged by the Defendant's false statements and omissions. They received a loan with substantially less favorable terms than the bait offered to them.

## IV. CLASS ALLEGATIONS

32. Plaintiff incorporates the foregoing allegations.

33. Plaintiff brings this complaint on behalf of a class of all other persons similarly situated.

34. The class is comprised of all Maryland residents who:

   a. Entered into a loan with Defendant within three years of the date this case was filed;

   b. The loan was for the refinance or purchase of a loan secured by the borrower's principal dwelling;

   c. The borrower was provided an initial good faith estimate, truth in lending disclosure or application that provided equal or substantial equal payments;

   d. The actual loan terms were based on a variable interest and the payments were not equal or substantially equal payments.

35. The class excludes any person employed by the court or who is a current or former employee, officer, director or, shareholder of the Defendant, its brokers or their relatives.

36. On information and belief, Defendant has entered into loans with more than 50 people that fit within the class definition set forth above.

37. The class is so numerous that joinder of all parties would be impracticable. On information and belief, the class includes tens, if not hundreds, of consumers.

38. There are questions of law and fact which are common to all members of the class and which predominate over any question affecting only individual Class Members including but not limited to the following:

    a.    Whether the initial disclosures in form documents were deceptive and designed to attract consumers to enter into loans with the Defendant;

    b.    Whether the Defendant was engaged in a classic "bait and switch"; and

    c.    Whether the Defendant's actions constitute an unfair or deceptive trade practice.

39. The only individual questions concern the identification of class members and the computation of appropriate relief which can be determined by discovery and/or a ministerial examination of Defendants' files.

40. Plaintiff's claims are typical of the claims of the Class Members.

41. Plaintiff will fairly and adequately protect the interests of all Class Members in the prosecution of this action. He is similarly situated with, and has suffered similar injuries as the members of the class he seeks to represent. Plaintiff feels that he has been wronged, wish to obtain redress of the wrong, and wants the Defendant to be held responsible for its unfair or deceptive acts.

42. Plaintiff has retained counsel experienced in handling class action suits and suits involving Maryland consumer protection laws including the MCPA.

43. Neither the Named Plaintiff nor their counsel have any interest which might cause them not to vigorously pursue this action or which would be considered antagonistic to the interests of the class.

44. The use of a common system and standard forms has resulted in a uniform course of conduct with respect to the entire class and on grounds uniformly applicable to the class as a whole.

45. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

   a. Concentration of the litigation concerning this matter in this Court is desirable;

   b. The claims of the representative Plaintiff is typical of the claims of the class;

   c. A failure of justice will result from the absence of a class action.

## V. CLAIMS

## VIOLATION OF THE MCPA

46. Plaintiff incorporates the foregoing paragraphs.

47. The standard forms and methods employed by the Defendant result in misrepresentations or omissions.

48. Plaintiff and the Class Members have been damaged by the Defendant's false Statements, misrepresentations, and omissions. They also received loans with substantially less favorable terms than described by the initial disclosures provided by the Defendant.

## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

49. Plaintiff incorporates the foregoing allegations.

50. Plaintiff seeks a declaration of his and the Class Members' rights and those of the class with respect to the loans made to them.

51. An actual controversy exists as to whether Defendant's loan sales efforts violate the MCPA.

52. Declaratory relief is appropriate pursuant to MD ANN. CODE., CTS. & JUD. PROC., § 3-403.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiffs and Class Members pray that this court:

    a. Certify this case as a class action pursuant to Maryland Rule of Civil Procedure 2-231 (b)(2) and (b)(3), with the named Plaintiff as class representative and his attorneys acting as counsel on behalf of the class described herein;

    b. Order appropriate injunctive relief to prevent further violations of law, including a preliminary and permanent injunction;

    c. Grant the Plaintiffs and the Class Members the relief they are entitled to under the MCPA in an amount to be determined at trial but not less than $30,000 for Plaintiff and each Class Member;

    d. Award costs, including reasonable attorneys' fees;

    e. Order appropriate declaratory relief; and

    f. Provide such other or further relief as the Court deems appropriate.

Respectfully submitted,

_____
Scott C. Borison
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick MD 21703
(301) 620-1016
Attorney for Plaintiff

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury of all issues that may be tried before a jury.

Respectfully submitted,

_____
Scott C. Borison