```
             IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                    *
JOSEPH HARMON and CHARLOTTE         *
HARMON, individually
and on behalf of all others         *
similarly situated,
                                    *
       Plaintiffs,
                                    *
       v.                                  CIVIL NO.: WDQ-08-3456
                                    *
BANKUNITED,
                                    *
       Defendant.
                                    *

*   *   *   *   *   *   *   *   *   *   *   *   *
```

MEMORANDUM OPINION

Joseph and Charlotte Harmon ("the Harmons"), for themselves and others similarly situated, sued BankUnited FSB ("BankUnited") for violation of the Maryland Consumer Protection Act ("CPA").[1] Pending are BankUnited's motions to substitute a party and dismiss. For the following reasons, BankUnited's motion to dismiss will be granted in part and denied in part, and its motion to substitute party will be granted.

I.  Background

The Harmons allege that Smart Money Mortgage ("Smart Money")--a broker for BankUnited--solicited them to refinance their home. Am. Compl. ¶¶ 2, 4.[2] On April 2, 2007, Smart Money

---

[1] MD. CODE ANN., COM. LAW §§ 13-101 *et seq.*

[2] For this motion, the Harmons' well-pled allegations will be accepted as true. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

sent the Harmons a Good Faith Estimate and Truth-in-Lending Disclosure Statement (the "preliminary disclosures") that their annual percentage rate would be 1.305 percent[3] with monthly payments of $850.24.[4]  *Id.* at Exs. 1-2.  The Disclosure Statement did not disclose a variable rate or prepayment penalty.  *Id.*

On May 16, 2007, the Harmons received--and later signed--an application for an adjustable rate mortgage.  *Id.* at Ex. 3; Pl.'s Opp. 4.  The loan had payments varying from $850.24 to $2,717.81 per month, and an 8.433 annual percentage rate.  Am. Compl. at Ex. 4.  It was subject to a prepayment penalty.  *Id.*  The Harmons were not told the loan terms had changed.  *Id.* ¶ 20.  BankUnited offered the loan knowing that they could not afford it and deceived them by providing the first loan documents with drastically different terms.  *Id.* ¶¶ 22, 26-28.  BankUnited lured them to the settlement table with its first loan offer.  *Id.* ¶¶ 22, 28.

On November 3, 2008, Joseph Harmon sued BankUnited in the Circuit Court for Carroll County on behalf of himself and all Maryland residents who had similar dealings with BankUnited in the prior three years. Compl. ¶ 34.  On December 24, 2008, BankUnited removed to this Court on the basis of diversity

---

[3] The Good Faith Estimate was a 1.2 percent interest rate. Am. Compl. Ex. 1.

[4] The Harmons' final payment would be $851.18.  Am. Compl. Ex. 2.

jurisdiction.[5]  Not. of Removal ¶ 6.  On April 14, 2009, the Court denied BankUnited's motion to dismiss and granted Harmon leave to amend the complaint to join Charlotte Harmon and to comply with Fed. R. Civ. P. 9(b).  Paper No. 16.  Joseph and Charlotte Harmon filed their first amended complaint on April 29, 2009.  Paper No. 17.

On May 21, 2009, the United States Office of Thrift and Supervision closed BankUnited FSB, and BankUnited, a newly chartered federal savings bank, assumed most of its assets and liabilities.  Def.'s Mot. to Substitute 1, Ex. 1 at 1.  On June 19, 2009, BankUnited filed motions to dismiss and substitute a party.  Paper Nos. 22 & 23.

II. Analysis

    A.   Standard of Review

        1.   Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

---

[5] BankUnited is organized--and has its principal place of business--in Florida.  Not. of Removal ¶ 6.

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts as pleaded must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id.* at 1950 (*citing* Fed. R. Civ. P. 8(a)(2)). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded

4

allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

   2.  Rule 9(b)

When a plaintiff alleges fraud or when "the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud," *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000), Rule 9(b) requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b).  The circumstances required to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

When a complaint alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff identify each defendant's participation in the alleged fraud.  *Adams*, 193 F.R.D. at 250. This principle extends to allegations of fraud on the basis of an agency relationship: "[C]onclusory assertions that one defendant controlled another, or that some defendants are guilty because of

5

their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)." *Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996); *see also Adams*, 193 F.R.D. at 250.

B.   Motion to Dismiss[6]

1.   Direct Liability

BankUnited argues that the complaint "provide[s] no basis for imposing direct liability on Bank United," and its liability would depend upon an agency relationship between BankUnited and Smart Money.  Def.'s Reply 2.  The Harmons argue that they have alleged BankUnited's unfair and deceptive conduct apart from the wrongful acts of Smart Money.  Pl.'s Opp. 11.

The CPA prohibits, among other things, (1) false or misleading representations,[7] (2) deceptive material omissions,[8] (3) advertising consumer goods[9] without the intent to sell them

---

[6]   The Court declines to convert this motion to dismiss into a motion for summary judgment and will not consider the Mortgage Loan Origination Agreement attached to the motion because it was not referenced in or relied on by the complaint.  *See HQM, Ltd. v. Hatfield*, 71 F. Supp. 2d 500, 502 (D. Md. 1999) (*citing New Beckley Min. Corp. v. International Union, United Mine Workers of Ameri*, 18 F.3d 1161, 1164 (4th Cir. 1994)) (when deciding a motion to dismiss the Court may consider "written documents referred to in the complaint and relied upon by the plaintiff in bringing the civil action").

[7] Md. Code Ann., Com. Law  § 13-301(1).

[8]  Md. Code Ann., Com. Law  § 13-301(3).

[9] "Consumer goods" include "credit, debts or obligations . . . which are primarily for personal, [or] household" use.  Md.

6

as advertised,[10] and (4) deceiving, omitting, or misrepresenting material facts to induce reliance.[11] Md. Code Ann., Com. Law § 13-301.  A fact is "material if a significant number of unsophisticated consumers would find that information important in determining a course of action." *Green v. H & R Block, Inc.*, 355 Md. 488, 524, 735 A.2d 1039, 1059 (1999); *see also Luskin's v. Consumer Protection*, 353 Md. 335, 358-59, 726 A.2d 702, 713 (1999).  Materiality is ordinarily a question of fact for the jury.  *Green*, 355 Md. at 524.

The Harmons allege that "[t]he standard forms and methods employed by [BankUnited] result[ed] in misrepresentations or omissions."[12]  Am. Compl. ¶ 62.  Because this CPA claim sounds in fraud, it must be pled with particularity under Rule 9(b).  *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250-52 (D. Md. 2000); *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).

> i.   Material Omissions

The Harmons have alleged that BankUnited knew about the 1.2% yearly interest rate and $850.24 monthly payments provided in the

---

Code Ann., Com. Law § 13-101(d).  Under this definition, a loan agreement is a "consumer good."

[10] Md. Code Ann., Com. Law § 13-301(5)(i).

[11] Md. Code Ann., Com. Law § 13-301(9)(i).

[12] Section 13-408 provides a private cause of action to recover for injury and loss from a forbidden practice.  Md. Code Ann., Com. Law § 13-408(a).

7

preliminary disclosure documents[13] and did not advise them that the loan terms would differ.  Am. Compl. at ¶¶ 9-10, 20.  They further allege that BankUnited used the preliminary disclosures to induce them to enter an agreement with substantially less favorable terms.  *Id*. ¶ 17, 28, 63.  As the time, place,[14] and content of BankUnited's alleged material omission are evident from the complaint, the Harmons have stated a claim under the CPA.

### ii.  Material Misrepresentations

The Harmons have also alleged that BankUnited is responsible for the misleading contents of the preliminary disclosures because they were prepared using "standard forms."  *Id*. ¶¶ 17, 62.  As these preliminary disclosures are required by the Truth in Lending Act,[15] the Harmons argue that BankUnited is responsible for their misleading content.  *Id*. ¶¶ 11, 19.  These documents were provided to the Harmons by Smart Money, and the complaint does not allege that BankUnited required their use or

---

[13] Making all reasonable inference in favor of the Harmons, BankUnited knew the contents of the preliminary disclosures because they compared the Harmons' "current mortgage payment to the proposed negative amortizing payment of $850 per month" before underwriting the loan.  Am. Compl. ¶¶ 9-10.

[14] The Harmons allege that "[a]t settlement, no one advised the Plaintiffs that the loan terms had changed."  Am. Compl. ¶ 20.  "At settlement" satisfies the particularity requirements and gives notice of where and when the alleged wrongful omission occurred.

[15] *See* 12 C.F.R. § 226.19(a)(1) & (b).

controlled their content. *Id*. ¶ 13. Thus, only Smart Money and not BankUnited made the alleged misrepresentations in the preliminary disclosures.[16]

    2.   Vicarious Liability

BankUnited argues that the Harmons' claims must be dismissed because they have failed to allege with particularity an agency relationship between Smart Money and BankUnited. Def.'s Mot. 6-11. The Harmons counter that their allegations are sufficient to impose liability on BankUnited for Smart Money's misrepresentations in the preliminary disclosures. Pl.'s Opp. 12-19.

"Whe[n] a plaintiff's claim is dependent upon the existence of an agency relationship, the plaintiff has the burden of proving such a relationship, including its extent." *Proctor v. Metropolitan Money Store Corp.*, 579 F. Supp. 2d 724, 735 (D. Md. 2008).[17]

In Maryland, an agency relationship exists when: "(1) the agent is subject to the principal's right of control; (2) the

---

[16] The Harmons also argue that BankUnited had a duty to determine whether they could afford the loan but failed to investigate the Harmons' income or ability to pay. Am. Compl. ¶¶ 25, 26. This failure to investigate is not misrepresentation or omission under the CPA.

[17] Rule 9(b) requires that when "a plaintiff is seeking to hold a defendant vicariously liable for the [fraudulent] acts of its agents, it must allege the factual predicate for the agency relationship with particularity." *Adams*, 193 F.R.D. at 250.

9

agent has a duty to act primarily for the benefit of the principal; and (3) the agent has the power to alter the legal relations of the principal." *Brooks v. Euclid Systems Corp.*, 151 Md. App. 487, 506 (2003); *see also Proctor*, 579 F. Supp. 2d at 735. These factors are neither essential nor exclusive but "should be viewed within the context of the entire circumstances of the transaction or relations." *Green v. H & R Block, Inc.*, 355 Md. 488, 735 (1999).

Here, the Harmons must have pled an agency relationship between Smart Money and BankUnited when the misrepresentations were made. To show agency, the Harmons have relied on allegations that Smart Money was part of the BankUnited network of brokers. Am. Compl. ¶¶ 4, 7. That brokerage relationship, although relevant, does not show agency.[18] Instead, the Court

---

[18] "A person who conducts a transaction between two others may be an agent of both or them in the transaction, or the agent of one of them only, although the agent of the other for other transactions, or the agent of one for part of the transaction and the agent of the other for the remainder." Restatement (Second) of Agency § 14L (1958). To analyze the agency relationship among the mortgagor, mortgagee, and the mortgage broker, some courts have analogized mortgage brokers to insurance brokers. *See Hawthorne v. American Mortg., Inc.*, 489 F. Supp. 2d 480, 486 (E.D. Pa. 2007). "The general rule for insurance cases, is that the broker is the agent of the insured who purchases insurance, not the agent of the insurer who issues it." *Id*; *see also Reserve Ins. Co. v. Duckett*, 240 Md. 591, 601, 214 A.2d 754, 760 (1965). By analogy, Smart Money, as the mortgage broker, is presumed to be acting as an agent for the Harmons, the mortgagors, and not for BankUnited, the mortgagees. Maryland courts do not apply a bright line rule that brokers are always agents of the buyer but instead examine the relationships among the parties to a transaction. *See Brooks v. Euclid Systems*

10

must examine the particulars of this relationship.

### i. Principal's Right of Control

"A principal's right to control its agent is of paramount importance, but that control may be exercised in myriad ways." *Brooks*, 151 Md. at 507. In all cases, "the agent must be subject to the principal's control over the result or ultimate objectives of the agency relationship," but "[t]he level of control may be very attenuated with respect to the details." *Green*, 355 Md. at 508, 510.

The complaint alleges that Smart Money applied to BankUnited to sell its loan products to borrowers and became an "affiliated broker." Am. Compl. ¶¶ 7(a)-(c). It alleges that "BankUnited oversees the operations of its brokers, including Smart Money, and retains underwriting duties and responsibilities for the loans arranged by the brokers." *Id*. ¶ 7. BankUnited allegedly "required Smart Money to use [its] closing package and underwriting services," and Smart Money used proprietary software and web-based marketing tools "at the direction and supervision of BankUnited." *Id*. ¶¶ 7(d) & (f). These allegations are sufficient; the Harmons have pled facts showing the right to control.

---

Corp., 151 Md. App. 487, 506-515, 827 A.2d 887, 898-902 (2003) (examining the agency relationship among an investor, a broker, and an issuer).

        ii.  Duty to Act Primarily for the Benefit of the Principal

The complaint does not allege an exclusive brokerage relationship[19] or plead facts showing that Smart Money had a duty to act "primarily" for the benefit of BankUnited in the transaction with the Harmons. Instead, the complaint shows that Smart Money was part of a "network of mortgage brokers" employed by BankUnited. Am. Compl. ¶ 3. The Estimate provided by Smart Money to the Harmons states "no lender has been obtained."[20] Am. Compl. Ex. 1. Thus, when the preliminary disclosures were made, BankUnited was one of several lenders for whom Smart Money was soliciting the Harmons.[21] Thus, the Harmons have not shown that Smart Money had a duty to act primarily for the benefit of BankUnited in the transaction.

        iii. Power to Alter the Legal Relations of the Principal

The Harmons have not argued that Smart Money had the power

---

[19] Though exclusivity is not required to establish a principal-agent relationship, it would tend to show that an agent is acting *primarily* on behalf of a principal. "[I]t would be unusual to perceive a mortgage broker as an agent of a lender, especially one lender among many that [the broker] routinely solicits loan from on behalf of the broker's clients." *Richardson v. New Century Mortgage Corp.*, No. 2:03CV372PA, 2005 WL 1554026 at *9 (July 1, 2005), aff'd 202 Fed. Appx. 773 (5th Cir. 2006).

[20] The Court considered the Good Faith Estimate because it was an exhibit to the complaint. FED. R. CIV. P. 10(c).

[21] Typically, the broker is presumed to be an agent for the borrower not the lender. *See supra* note 18.

to alter the legal relations of BankUnited.  *See* Def.'s Reply 7. The complaint shows that BankUnited, and not Smart Money, selected loan applicants.  *See* Am. Compl. ¶¶ 3, 7.  There is no showing that Smart Money could contract for BankUnited.

The Harmons have not sufficiently pled an agency relationship between BankUnited and Smart Money.[22]  Thus, they have not stated a claim for vicarious liability against BankUnited.

C.   Motion to Substitute Party

Fed. R. Civ. P. 25(c) permits the substitution of parties upon a "transfer in interest."  BankUnited FSB has closed, and BankUnited has assumed responsibility for this case.  Def.'s Mot. to Substitute 1, Ex. 1 at 1.  As the Harmons have not objected, BankUnited will be substituted as the Defendant.

III. Conclusion

For the reasons stated above, BankUnited's motion to dismiss will be granted in part and denied in part, and its motion to substitute a party will be granted.

October 22, 2009                         /s/
Date                           William D. Quarles, Jr.
                               United States District Judge

---

[22]   There is no apparent agency shown, as BankUnited did not indicate that Smart Money was acting for or at its direction when the preliminary disclosures were made.

13